PHILLIPS *v.* THE TROWBRIDGE FURNITURE COMPANY.

1. According to section 1890 of the code, as construed and expounded in *Sankey & Shorter* v. *Columbus Iron Works*, 44 *Ga.* 228, a joint interest in the profits of a business involves joint ownership, while a common interest negatives joint ownership by the interested parties, and implies that one of them, at least, has no ownership of the profits whatever, and is therefore no partner. Where, under the evidence, there is any uncertainty as to whether the parties intended a joint interest in profits, or only a common

interest, that question is one of fact for determination by the jury upon the contract, according to its real meaning, in the light of all the circumstances of the case, and not one for decision by the court, the contract not being in writing, but in parol.

2. Upon a question of partnership or no partnership, a letter to the plaintiff from the attorneys of the defendant who denies the alleged partnership, written before the debt was created and in respect to giving security for the prospective debt by incumbering specific property belonging to such defendant, and not with reference to crediting her as a partner, is irrelevant, and therefore inadmissible, as evidence in behalf of the plaintiff.

September 30, 1893.  Argued at the last term.  *Judgment reversed.*

Bill to foreclose mortgage.  Before Judge MILLER. Bibb superior court.  April term, 1892.

This case was formerly before the Supreme Court. 86 *Ga.* 699.  At a subsequent trial the plaintiff again obtained a verdict and decree against Mrs. Phillips, and her motion for a new trial was overruled.  The substantial grounds of the motion are, that the court erred in holding that under the facts in evidence Mrs. Phillips was a partner with Neal so far as third persons were concerned, and in leaving the jury to find only the amount due, instead of submitting to them, as a question of fact, whether or not she was a partner; and in admitting in evidence a letter from Lofton & Moore to the plaintiff, over objection.

Mrs. Phillips testified :  I never was in partnership with Neal.  I stood his security with the plaintiff. This was the only connection I had with his business. I had no interest in the business except to stand his security.  I never authorized any person to make a copartnership contract for me with him.  Dorsett, my brother, generally represented me in my business, advised me, and acted for me whenever I called on him; he was my general agent.  I had no business transactions with Neal except to stand his security, and for this I was to receive one third of the profits of his business. All of this transaction was conducted for me by Dorsett.

The substance of the transaction was, I was to stand Neal's security to the plaintiff, and for this I was to receive one third of the profits of his business. I did not authorize my brother to make me a partner with Neal.

Dorsett testified: I was about the store most of the time while Neal was running his furniture business. Mrs. Phillips' connection with Neal was, she was Neal's security, that is, she made a mortgage as security for him. She was not a partner. I arranged the whole thing for her. Neal was to give her one third of the net profit, for making this security for him. I was about there all the time. Neal and I kept books together. Mrs. Phillips in making the contract reserved the right to look into the business at any time to see that there was enough to secure her against loss, and when Neal opened, spoke of getting some one else to help him, and I was not doing anything, and I told him he had as well let me work there; he did not pay me any fixed salary, but let me have money along. Mrs. Phillips did not reserve the right to supervise the business at all, but simply the right at any time she saw proper to go and have the business looked into. Question : She reserved the right to see the business was going on right and she was getting her profits ? Answer : Well, of course she did not want to turn the thing loose to Neal, and not know whether she was secured or not. I wouldn't have made such a contract, but she was not to have any management of the business whatever. She was to have one third the net profits for making the paper and securing the debt. I did not ask Neal to let me take the books to Russell's store. I picked them up and walked out. Representing Mrs. Phillips, I thought I had a right to look into them. As to the agreement referred to in the letter to plaintiff, Neal wanted the agreement drawn up with Mrs. Phillips that she did not have anything to do with

the management of the business at all—that it was his sole business. The paper was never drawn up; it was neglected. Neal bought only a very small amount of goods, except from plaintiff. He was in business, I think, about six months. He is insolvent—has nothing. He always told me he did not have any property, and I never saw him in possession of anything except the stock in the furniture business. The reason I made this list (of accounts on his books) was, he had been drinking and I was afraid somebody was going to lose some money, and I was going to see if there was enough to secure this debt so Mrs. Phillips would not be liable for it.

Neal testified: Mrs. Phillips was interested in the business with me, I only having a working interest. Dorsett looked after the business and kept the books of account.—The mortgage, dated December 14, 1887, recites, that in consideration of one dollar in hand paid and specially in consideration of credit given by plaintiff to Neal in the sum of $1,000 on open account, Mrs. Phillips hereby conveys to plaintiff certain realty, provided, if Neal shall pay the plaintiff whatever amount. he may be justly indebted on account not to exceed $1,000, this mortgage to be void, else of force.

Plaintiff's secretary and treasurer testified: In 1887 Neal applied for a line of goods to be furnished as he needed them, to amount of $1,000. He offered us as security a mortgage on a piece of property belonging to Mrs. Phillips. I had this mortgage drawn by Moore, as security for these goods that I was to sell to Neal. I sold the goods upon credit of Neal and Mrs. Phillips. I charged the goods to C. A. Neal as a firm, with the understanding that Mrs. Phillips was a partner. I furnished the goods on the strength of this letter from Moore, and would not have furnished them if it had not been for that letter. If the letter had been written without the mortgage, I would not have furnished the

goods.—The letter referred to (which was that admitted over objection) was dated December 14, 1887, and acknowledged receipt of a communication from plaintiff, of December 12. After stating the result of Lofton & Moore's examination of Mrs. Phillips' title to the land she had offered to mortgage to plaintiff, its value, etc., the letter contains the following: "Mrs. Phillips is a widow, and we have been engaged by her brother to draw the agreement between Neal and Mrs. Phillips, to the effect that she is to receive one third of the net profits of the business Neal expects to engage in. She did not care for her name to be known in the business here; it will be run under Neal's name alone. So we think that would be a sufficient consideration flowing to her, to bind her under her contract to you.'

L. D. MOORE, for plaintiff in error.

ANDERSON & ANDERSON, *contra.*